## PALMER *vs.* SAWTELL.

After the execution of a bond for the debtors' liberties, the sheriff is not liable if the debtor escape.

THIS was an action of debt against the late sheriff of *Somerset*, for the voluntary escape of a debtor committed in execution. It

appeared from the plea in bar that the debtor was liberated from close custody, on giving a bond duly approved, with sufficient sureties, conditioned, according to the form of the statute then in force, that he should continue *a true prisoner in the custody of the gaoler,* and within the limits of the prison, *without committing any manner of escape,* until he should be lawfully discharged, &c. which condition he had broken. To this the plaintiff demurred.

*R. B. Allyn,* for the plaintiff, argued from the language of the statute, and the terms of the condition of the bond, that the relation of gaoler and prisoner still continued, after the giving of bond for the debtors' liberties, as before; and that while the debtor stood charged as a prisoner, the sheriff remained liable if he should escape. *Baxter v. Taber* 4 *Mass.* 361.

*Abbot,* for the defendant, contended that the bond was a substitute for the custody of the sheriff, and discharged him from all further responsibility. *Cargill v. Taylor* 10 *Mass.* 206.

MELLEN C. J. delivered the opinion of the Court.

Since the time when the bond in this case was given, the laws in relation to debtors in execution, and to the nature and degree of the indulgences granted to them on giving bond for the liberties of the prison, have undergone several important changes; and all these changes have been made in favor of debtors. As this spirit of liberality towards them has increased, changes have also been made in the condition of the bond required to be given to obtain the liberties of the prison. In the statute of *Massachusetts* of 1811, *ch.* 85, the condition of the bond required is that the prisoner, from the time of executing such bond, " will not depart " without the exterior bounds of the goal yard or debtors' liberties " until lawfully discharged." In the additional act of 1811, *ch.* 167, the condition required is that the debtor, from the time of executing the bond, " will not depart without the exterior bounds " of the debtors' liberties until lawfully discharged." By the statute of this State of 1822, *ch.* 209, the condition of the bond for the liberation of a prisoner in execution for debt is that " he " will not depart without the exterior bounds of the gaol yard until

Palmer v. Sawtell.

" lawfully discharged, and that he will surrender himself to the
" gaol keeper and go into close confinement as is required
" by law." By the act of *Massachusetts* 1784, *ch.* 41, the condi-
tion required was that the debtor from the time of executing
such bond should " continue a true prisoner in the custody of the
" gaoler and within the limits of the said prison until he should be
" lawfully discharged, without committing any manner of escape."
The counsel for the plaintiff has relied upon the averments in the
declaration as to the defendant's having freely and voluntarily dis-
charged the debtor, from his imprisonment, and suffered him to
escape and go at large. These averments can have no legal
meaning, if the debtor, after having given the bond mentioned in
the plea, ceased to be a prisoner, subject to the coercive power
of the sheriff; and we are clearly of opinion that such was the
fact. In *Call v. Hagger & al.* 8 *Mass.* 423, which was an action
on a prison bond, the defence was that the sheriff himself deceiv-
ed the prisoner as to the proper limits of the gaol yard; by means
of which he had committed the alleged escape; but the Court
decided that such deceptive instructions could not avoid the
effect of the bond. The changes which have been made in the
condition of prison bonds, have occasioned no change in the law as
to the liability of the obligors, where the prisoner has passed the
limits by law established. In the action *Cargill v. Taylor & al.*
10 *Mass.* 206, the bond declared on, was dated *Aug.* 10, 1810 ;
and, of course, was similar to the one in the case before us. The
Chief Justice, in giving the opinion of the Court, says, " bonds
" given to entitle a prisoner to the liberties of the prison yard,
" are in effect a substitute for the custody of the sheriff,"—af-
" ter enlargement of the prisoner upon the acceptance or allow-
" ance of the bond, his restraint, the custody in which he remains,
" is altogether of a moral nature. A bond regularly taken and
" allowed discharges the sheriff from any further responsibility
" for the prisoner's remaining within his custody. The restraint
" to which he is subject is indeed called the custody of the gaoler;
" not, however, as expressing his power of control, or a confine-
" ment within the walls of the prison, but the bounds and limits
" prescribed by law, in which he is kept by the penalty of the
" bond." In the case of *Codman v. Lowell,* [*ante p.* 52.] this

Court has proceeded on the same principle, and declared that after a bond is given and approved, the sheriff has no authority over the prisoner, and cannot exercise any control over his actions. These cases shew that the debtor, when he had given the bond in question, ceased to be a prisoner in the custody of the defendant, in the legal acceptation of the terms; and therefore he could not discharge him from his custody; he had ceased to be an imprisoned debtor, and so the defendant could not permit him to escape from imprisonment. Whatever remedy the plaintiff has, must be obtained by a suit on the bond.

We accordingly adjudge the plea in bar sufficient in law.